### KILGORE v. McKETHAN, et al.

Circuit Court, Lake County.

February 2, 1954.

Thomas T. Cobb, Daytona Beach, for plaintiff.

Mabry, Reaves, Carlton, Fields & Ward, Tampa, Thomas Sale, Panama City, and Charles A. Savage, Ocala, for defendants Alfred A. McKethan, Merrill P. Barber, J. Glover Taylor, Marion G. Nelson and Trusten Drake, Jr.

R. P. Hamlin, Tavares, for defendant C. B. Treadway.

C. E. Duncan, Tavares, and Bedell & Bedell, Jacksonville, for defendant C. V. Griffin.

Weldon G. Starry, Tallahassee, for defendant Fuller Warren.

Wallace E. Sturgis, Ocala, for defendants Clarence Camp II and B. M. Craig.

T. G. FUTCH, Circuit Judge.

Plaintiff S. L. Kilgore complains of damages to his health, earning capacity and loss of his job as the final result of an alleged conspiracy entered into and consummated by the defendants. The first mention of conspiracy is found in paragraph 6 of the complaint where it is alleged, inter alia, that—"The defendants and each of them, in the early days and months of 1949 entered into *the aforesaid continuing conspiracy . . . .*" (Emphasis supplied.) We now carefully search the content of the preceding five paragraphs of the complaint for "the aforesaid continuing conspiracy," and we find—

Paragraph 1 alleges the names and places of residence of the defendants—and nothing more. Paragraph 2 alleges the residence, former employment, salary and summary discharge of the plaintiff from his position as sales manager for the defendant Florida Crushed Stone Co.—and nothing more. Paragraph 3 alleges the business pursuits and monopolistic position of the Florida Crushed Store Co.—and nothing more. Paragraph 4 alleges that the defendant Fuller Warren was a candidate for the Democratic nomination for governor of Florida in 1948, that he was nominated and elected to that office after the expenditure of hundreds of thousands of dollars and took over the duties of office in due course, that the defendant C. V. Griffin supplied more than $150,000 of the Warren campaign fund in the primary election, that Warren appointed certain men as members of the State Road Department who are named as defendants in this cause and—*nothing more.*

There is no allegation of evil design or corrupt motive on the part of Griffin which prompted him to make the alleged large contribution, nor is there any allegation that the contribution was made upon any condition, exaction or promise preceding, co-incident with or subsequent thereto. So far as the averments of this paragraph

are concerned Griffin made the alleged donation without the knowledge of Warren and without "strings attached," reward offered or punishment threatened.

In this great free America we all know that an election for the selection of public officers, local, state or national, is more of a sporting event than a matter of statesmanship and good government, we all know that in politics, as in sports, in the heat of the game the proponents of the respective contenders act without reason and to demonstrate their faith in their favorite contestant will hazard all sorts of unreasonable forfeits, we know, too, that under such conditions the opposition ascribes ulterior motives to any contribution or activity on the part of anyone, however small or however large. In an election everyone knows that such ascribing is nothing more or less than political gossip. It is not made of sufficient substance to support a positive allegation of corruption or ulterior motive in a law suit and plaintiff carefully makes no such allegation. It follows that this alleged contribution adds no substance to the subsequent allegations concerning "the aforesaid continuing conspiracy."

Paragraph 5 of the complaint we quote in full because here, if at any place in the complaint, we must find "the aforesaid continuing conspiracy" alleged and referred to in the next paragraph 6 of the complaint. Paragraph 5—

> By virtue of the power and authority vested in him by the constitution and laws of the state of Florida, the defendant Fuller Warren was able, from the time he assumed office, to dictate the policies to be followed by the State Road Department, and he did so dictate those policies. He directed the chairman of the State Road Department to so operate his department that Florida Crushed Stone Co. would be forced to pay a portion of its income from sales of rock to contractors doing business with the State Road Department, to Construction Equipment Co. for the purpose of paying back some of the huge campaign contributions that had been made to the Warren campaign by the defendant C. V. Griffin, and others, and for other illegal purposes.

Neither the constitution nor the laws of the state of Florida vests the governor with the powers alleged, but that is of no consequence. The allegation here is that the defendant Warren as governor, acting *in solo,* instructed the Road Department to put the defendant and alleged co-conspirator, Florida Crushed Stone Co., out of business so far as furnishing materials for road construction in Florida was concerned unless it paid tribute for the purpose of paying back campaign contributions made by the defendant Griffin and others, "and for other illegal purposes."

There is no allegation that Griffin or any other person who contributed to the Warren campaign fund demanded, wanted or ex-

pected to recoup in any manner the money expended in that behalf. So far as the allegations of the complaint show, the contributors expected and wanted nothing more than the exultation of having rooted for the winner, while those who had expended equally large sums on the losing candidate licked their campaign wounds and lamented that they would not be present at the inner counsel table. Thus it is and has always been, and will continue to be until the last Saturday evening of time in our full blown freedom of democratic politics that men will over-exert and do foolish things in the heat of political battle and that "to the victors belong the spoils" and only the weak will cry when they lose.

Thus paragraph 6 of the complaint refers to "the aforesaid continuing conspiracy"—which is in no way alleged or "aforesaid."

Since there is no exception made at any place of the defendant, Florida Crushed Stone Co., and all references are to "the defendants," the complaint actually alleges that that company entered into a conspiracy to force itself to do something it did not want to do and to put itself out of business!

The complaint avers that specifications were changed so that the crushed stone company could not meet them and consequently was forced out of business so far as road building in Florida was concerned, yet it fails to allege that the old specifications were restored when it alleges that the crushed stone company was itself crushed to the extent that it was glad to say "uncle" and pay the tribute demanded.

While it avers that Florida Crushed Stone Co. was advised that it could increase its prices after it entered into the alleged contract with Construction Equipment Co., there is no allegation that prices were increased. This alleged contract between the two companies was allegedly entered into on or about September 19, 1949, and according to the complaint was the *sine qua non* of the conspiracy.

Having reached their intended goal, it made no difference to the "conspirators" who might thereafter conduct the affairs of the co-conspirator and conspiracy victim, Florida Crushed Stone Co., or who occupied the figurehead position of "sales manager" of the victim which was then held by plaintiff. However, according to the allegations of the complaint, plaintiff, after much dispute and haranguing with and at the then president of the victim corporation, Harry Camp, was summarily discharged on December 3, 1949—more than two months after the alleged object of the "conspiracy" had been attained. It is significant that the lips of Harry Camp, who dismissed plaintiff, are now sealed in death.

Plaintiff has not made it appear that he was employed for a fixed period of time, hence it is quite clear that the Florida Crushed Stone Co. was free to dismiss him from its employ at any time and for any or no reason at all, and it exercised that right.

The complaint is expertly and adroitly prepared and worded to appeal to the world of gossip, sensational journalism and character assassins, but not to positive, sane thinking.

Our rules of procedure require that a complaint must state "a cause of action" upon which relief may be granted, and not a set of alleged facts which might, in the course of procedure and trial, develop something upon which relief of some nature might eventually be granted.

I have reached the conclusion that the complaint fails to state a cause of action and, therefore, each of the several motions to dismiss will be granted and appropriate order will be entered to that effect.